U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - ALEXANDRIA

NOV 1 9 2007

ROBERT H. SHEMWELL, CLERK
BY _____
        DEPUTY

## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **KURT ALBERT, ET AL** | : | **DOCKET NO. 05-516(Lead)** |
| | | **c/w 05-517, 05-518 and 05-519** |
| **VS.** | : | **JUDGE TRIMBLE** |
| **KENNETH L. JORDAN, ET AL** | : | **MAGISTRATE JUDGE WILSON** |

### MEMORANDUM RULING AND ORDER

Before the Court is a "Motion in Limine to Exclude Testimony of Witnesses Glenn Hebert,

MRC and R. Douglas Womack, PH.D." (Doc. #28) filed by defendants, Landstar Ligon, Inc.

("Landstar") and Kenneth Jordan. Defendants complain that these expert witness' testimony runs afoul

of Federal Rule of Civil Procedure 702 and *Daubert v. Merrill-Dow Pharmaceuticals, Inc.*[1]

This case stems from an automobile accident involving a vehicle driven by Benny Bradley and

a truck driven by Kenneth Jordan. Paul Reed, Keith Dorn and Kurt Albert were guest passengers in Mr.

Bradley's vehicle at the time of the accident. Paul Reed and Keith Dorn claim a variety of injuries as

a result of the collision and among other claims, seek an award for loss of future earning capacity. To

substantiate their future loss earnings claims, they have employed the services of two expert witnesses,

Glenn Hebert, MRC, a vocational rehabilitationist, and R. Douglas Womack, PH.D., an economist.

Plaintiffs maintain that Mr. Hebert followed Louisiana jurisprudence to measure loss of future

earnings or earning capacity. Mr. Hebert cites in his affidavit, treatises and peer reviewed publications,

which he declares explains the methodology he employed. Plaintiffs cite several Louisiana cases that

consider certain factors considered by courts to determine a loss of earning capacity. *Burgard v.*

---

[1] 509 U.S. 579 (1993).

*Allstate Ins. Co.*[2] (To support a claim for loss of earning capacity, a plaintiff need not show a loss of income as compared to his pre-accident income, but must show that his ability to earn a living is impaired);*Noel v. Walmart Stores, Inc.*,[3] (the trier of fact should consider the degree in which the plaintiff's injuries disadvantages his ability to earn, rather than what the plaintiff actually earned prior to the injury); *Birdsall v. Reg'l Electric and Const., Inc.*,[4] (an award of loss of future income is not based merely upon the difference between a plaintiff's earnings before and after a disability injury); *Folse v. Fakouri*,[5] (damages for decreased earning capacity is determined by deducting plaintiff's ability after the injury from his earning "ability" immediately prior to the injury);*Rodgers v. National Dealers Services, Inc.*,[6] (loss of future income encompasses the loss of one's earning potential – the loss or reduction of a person's capability to do that for which he is equipped by nature, training and experience, and for which he may receive recompense).

Federal Rule of Evidence 702 provides the following regarding expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

"The trial judge must ensure that any and all scientific testimony or evidence admitted is not only

---

[2] 904 So.2d 867, 879 (La.App. 5th Cir. 2005).

[3] 894 So.2d 555, 559 (La.App. 3rd Cir. 2005).

[4] 710 So.2d 1164, 1170 (La.App. 1st Cir. 1998).

[5] 371 So.2d 1120 (La. 1979).

[6] 508 So.2d 1007, 1011 (La.App. 2nd Cir. 1987).

2

relevant, but reliable."[7]   The party offering expert testimony must prove by a preponderance of the evidence that the proffered evidence satisfies the criteria of Federal Rule of Evidence 702.[8]  "The court must determine that the reasoning and methodology underlying the testimony is scientifically valid and that the reasoning and methodology can properly be applied to the facts in issue."[9]  Rule 702 has three major requirements: (1) qualifications, (2) reliability, and (3) relevance.[10]

Daubert lists five considerations to assist the trial judge in determining "reliability" of the expert's testimony: (1) the "testability of the expert's theory or technique; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards and controls; and (5) whether the methodology is generally accepted in the scientific community."[11]

*Glenn Hebert, MRC*

Defendants specifically complain about Mr. Hebert's methodology in determining that the plaintiffs, Reed and Dorn, suffered a loss of future earning capacity.   Mr. Hebert testified that he did not consider Plaintiffs' prior wages as a component of his loss of future earnings analysis.[12] Mr. Hebert explained that he did not consider prior tax returns or social security earnings because these Plaintiffs were under the age of thirty.[13]  Defendants further complain that Mr. Hebert disregarded Plaintiffs' past

---

[7]  *Daubert v. Merrill Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589 (1993).

[8]  *Mathis v. Exxon Corp.,* 302 F.3d 448, 459-60 (5th Cir. 2002).

[9] *Allen v. Pennsylvania Engineering Corp.,*  102 F.3d 194, 196 (5th Cir. 1996) citing *Daubert,* 509 U.S. at 592-93.

[10]   *Smith v. Fifthian,* 2006 U.S. Dist. LEXIS 51054, *4-5 (W.D. La. July 26, 2006).

[11]  *Daubert,* 509 U.S. at 591-95.

[12]  Exhibit A to Defendants' Memorandum, p. 9.

[13]  *Id.* at pp. 9 and 30.

work record and its consistency.[14] Defendants assert that even though Mr. Hebert ultimately opined that both Dorn and Reed experienced a loss of future earning capacity, he admitted that if he would have taken into consideration Plaintiffs' work history and consistency, they would not have suffered a loss of future earnings.[15]

*Douglas Womack, PH. D.*

Dr. Womack was hired to render an opinion and testify regarding the economic loss allegedly sustained by Reed and Dorn, or more specifically, to calculate the actual amounts of lost earnings. Defendants assert that the basic assumptions that underlie the entire analysis performed by Dr. Womack rely on the work performed by Mr. Hebert and/or a wage earning of $14.00 provided by Plaintiffs' attorney. For example, instead of calculating future lost earning capacity by an accepted methodology, Defendants complain that Plaintiffs' attorney provided a wage figure of $14.00 per hour on a full-time basis.[16] Dr. Womack testified that (1) his calculations were not supported by past earnings, (2) Mr. Granger (Plaintiff's attorney) provided the $14.00 per hour rate, (3) he did not factor into his analysis past earning history, and (4) his other calculations were based on Mr. Hebert's opinions.[17] Dr. Womack further testified that if Mr. Hebert's assumptions failed, his own calculations would not be accurate.[18]

In calculating Plaintiffs' loss of potential earning capacity, these experts have failed to take into consideration all of the factual data and have based their opinions on pure speculation resulting in amounts

---

[14] *Id.* at pp. 32 and 53..

[15] *Id.* at pp. 34-35 and 52.

[16] Exhibit B to Defendants' Memorandum, pp. 17-18.

[17]*Id.* at pp. 17-18 and 45.

[18] *Id.* at p. 27.

that are entirely speculative.  In *Callihan v. Town of Vinton,*[19] the court held that "[t]he factors to be considered in determining future loss of income includes the plaintiff's physical condition before and after the injury, ***his past work record and the consistency thereof,*** the amount the plaintiff probably would have earned absent the injury complained of, and the probability that he would have continued to earn wages over the balance of his working life." (Emphasis added). Even though a plaintiff's earnings before and after the accident are not determinative, they are relevant.[20]

Mr. Hebert calculated Mr. Reed's earning capacity as a boiler-maker at $40,250.00; his Social Security records showed that he never earned more than $5,785.50 per year.[21] Dr. Womack calculated Mr. Reed's economic loss as $29,120.00 based on Mr. Reed's earning potential of $14.00 per hour as a full-time laborer. Mr. Reed's Social Security records indicate that Mr. Reed never earned more than $5,785.50 in a year; his total lifetime earnings are $10,631.68. Mr. Hebert calculated Mr. Dorn's loss of earning capacity as a welder between $34,460.00 and $36,870.00 per year. Mr. Dorn's Social Security records show that he never earned more than $15,804.56 per year.[22]    Mr. Hebert's vocational rehabilitation evaluation notes that Mr. Reed's highest level of education was the 8th grade and the Wid Range Achievement Test - Revision 4, indicates that Mr. Reed's reading, spelling and math

---

[19] 668 So.2d 735, 741 (La.App. 3rd Cir. 1995).

[20] *Hobgood v. Aucion,* 574 So.2d 344 (La.1990). See also *Mustiful v. Strickland,* 732 So.2d 741 (La.App. 3rd Cir. 1999)(when determining a future loss of earning capacity, include the plaintiff's physical condition before and after his injury, his past work record and the consistency thereof . . . .)

[21] Exhibit A at pp. 29-30 (Depo. Excerpts of Hebert) and D to Defendants' Memorandum in Support. Mr. Reed earned $819.85 in 2000, $5,785.50 in 2001, $3,205.76 in 2002, $827.50 in 2003 and $0 in 2004.

[22] *Id.* And Exhibit E to Defendants' Memorandum in Support. Mr. Dorn earned $3,392.46 in 1996, $3,025.11 in 1997, $45 in 1998, $220.00 in 1999, $78.54 in 2000, $3,514.50 in 2001, $4,434.51 in 2002, $15,804.56 in 2003, and $2,256.67 in 2004.

skills were between a 3rd and 4th grade level. Mr. Hebert opines that these "scores indicate the Mr. Reed is not the type of individual who would respond to vocational training in an academic setting.[23] Plaintiffs have presented no evidence as to Mr. Reed's aptitude or past work history that would indicate that Mr. Reed could obtain the status of a boiler-maker in two years.

Similarly, Plaintiffs have presented no evidence as to Mr. Dorn's aptitude or past work history that would indicate that Mr. Dorn could obtain the status of a welder at any time in the future. In fact, both Reed and Dorn's work history indicates that neither Plaintiff showed any indication whatsoever of working a steady, consistent job, much less go through any type of training or education to elevate their status to that of a skilled laborer. Accordingly, it is

**ORDERED** that the motion to exclude testimony and the reports of the experts  Mr. Hebert and Dr. Womack, with respect to Mr. Reed's loss of earning capacity as a boiler-maker and Mr. Dorn's loss of earning capacity as a welder are **GRANTED**. However, the Court will allow these experts to testify as to Mr. Reed and Mr. Dorn's loss of earning capacity based on a wage scale proven by their work history.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this _19th_ day of November, 2007.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE

---

[23] Exhibit A, Plaintiffs' opposition memo., p. 2 of Hebert's report of Reed.